BLEVINS et al. v. BLEVINS et al. No. 1.—147 S. W. (2d) 756.

Eastern Section. October 26, 1940.

Petition for Certiorari denied by Supreme Court, February 15, 1941.

Thomas E. Mitchell, of Johnson City, and O. H. Wilson, of Mountain City, for appellants.

H. A. Donnelly and H. B. Goodman, both of Mountain City, for appellees.

AILOR, J. This is an ejectment suit in which Noah W. Blevins and his sister, Eliza J. Blevins, seek to recover about one and one-half acres of land in the Eighth Civil District of Johnson County. The suit is primarily against Ray Blevins, half-brother of complainants, though E. Rice, trustee for Federal Land Bank of Louisville, is named as a defendant for conformity. Ray Blevins denied the averments of ownership of complainants as set out in their original bill, and claimed title to the land by gift from his father and adverse possession for more than twenty years. In an effort to nullify the effect of the alleged gift and possession of Ray Blevins, complainants set up and relied upon an alleged quitclaim deed by Ray Blevins covering the disputed land. Defendant admitted signing a paper, but averred that same was procured by fraud, if it were, in fact a quitclaim deed.

Considerable proof was taken on the issues thus made up and the cause was heard by the Chancellor. In a comprehensive opinion the Chancellor found all of the material issues against the complainants, and dismissed their bill. Complainants preserved exceptions to the decree so entered and prosecuted and perfected their appeal to this court for review.

It appears that the father of complainants and Ray Blevins was twice married, and that the defendant Ray Blevins was one of three children by the first wife and that complainants were children by the second wife. During his lifetime, the father, W. K. Blevins, apparently attempted to make a division of his real estate so as to avoid any controversy between his children. At any rate something like thirty-five years before the institution of this suit he made an oral gift of

a tract of about 29½ acres of land to Ray Blevins, who went into possession of the land at the time of the oral gift. This oral gift was confirmed by a deed many years later in 1911. But the description in the deed so executed is more or less general and it is not clear that it covers the small boundary in dispute. However, it is certain that Ray Blevins went into possession of the disputed boundary at the time of the oral gift, and that he continued in the undisputed possession of same until a short time prior to the beginning of this suit, when some dispute arose. At the time he went into possession of the land given to him by his father, the defendant built a residence on land covered by the deed and he built his barn and other out-houses on the small tract in dispute. He procured insurance on the barn first constructed and when it was burned down something like twelve years ago he collected the proceeds of the insurance policy and later rebuilt the barn at the same location. All of this is undisputed.

W. K. Blevins, the father, made his will in 1923, with full knowledge of the fact that Ray Blevins was in possession of the disputed tract of land and had been in the undisputed possession of it for many years. In his will W. K. Blevins provided that his estate, consisting of the home farm, containing 150 acres, more or less, be divided equally between the children by his second wife, naming them. He also recited the fact that he had already made provision for his three children by his first wife, including the defendant herein. In other words this will was made with full knowledge of the rights of Ray Blevins, including his occupancy of and claim to the disputed boundary. Under the circumstances we are of opinion that it is unreasonable to conclude that W. K. Blevins intended the meagre description of, "consisting of the home farm containing 150 acres, more or less," to cover lands at that time held adversely by Ray Blevins.

According to the testimony of Ray Blevins, he had been in possession of the disputed boundary of land for more than twenty years at the time the will of W. K. Blevins was signed by him. This testimony is not disputed. Noah Blevins admits that Ray was in possession of the lands when he became old enough to remember, and he was thirty years old at the time he gave his testimony. If this disputed boundary had been severed from the original place for as much as twenty years at the time the will was written it would be most unreasonable to conclude that W. K. Blevins intended for this brief description to cover the disputed lands. The Chancellor found that the parties stood on about the same basis so far as the descriptions in the deed to Ray Blevins and the description in the will went or that neither had the advantage over the other so far as their title papers were concerned. And we think this conclusion is sound if the title papers are to be considered separate and apart from surrounding circumstances. However, Ray Blevins had been in possession of the disputed boundary for more than twenty years at the time the will was executed, and his possession was with the full knowledge and

consent of W. K. Blevins, and we think is conclusive against the contention of complainants that the description in the will covered the disputed boundary. To hold with complainants in this connection would be to find that W. K. Blevins attempted to pass property by his will which was being held adversely at the time by another person. Such a provision of the will would be champertous and void, and we are not disposed to reach such a conclusion unless it is clearly necessary, which is not the case here. We, therefore, conclude that the description as contained in the will of W. K. Blevins, under the circumstances, was not sufficient to cover and convey the boundary in dispute to complainants and those named along with them.

There is a further insistence to the effect that defendant executed a quitclaim deed for the disputed boundary and also an affidavit, disclaiming any interest in the disputed boundary. But these documents are not in the record, and consequently it is impossible for us to pass upon their contents. Complainant Noah Blevins was called upon to file these documents, and he promised to do so, but for some reason not appearing in the record he failed to file them. There does appear as an exhibit to the original bill an affidavit by Ed Long, L. W. Hutchinson, J. M. Gentry, J. L. Long, Ray Blevins, Stanley Blevins and Pierce Blevins. This affidavit is to the effect that the affiants are personally acquainted with the tracts of land described therein, and that Noah Blevins and others had been in possession of same; that affiants were owners of property adjoining the lands described in the affidavit; that the boundaries of the same were well defined, and that they made no claim to any of the tract of land.

The Chancellor found in effect that the signature of Ray Blevins was procured to this instrument by fraud and deceit; that he was induced to sign it without knowing its contents, and that the explanation of the means employed by Noah Blevins to procure the signature to the document was unreasonable. We concur in this finding, and conclude that this affidavit was procured by fraud and misrepresentation, and that complainants are in no position to rely upon it as a link in their chain of title in ejectment. This being true complainants have failed to carry the burden of proof necessary for them to prevail in ejectment. They have not shown perfect title to the land in dispute as is necessary in ejectment cases. Lowry v. Whitehead, 103 Tenn., 396, 53 S. W., 731.

There is no such question as comparative titles in ejectment. The complainant must recover upon the strength of his own title and not upon the weakness of that of his adversary. It was necessary for complainants to show a perfect title to the land in dispute in order to prevail. Winters v. Hainer, 107 Tenn., 337, 64 S. W., 44.

We, therefore, conclude that there was no error in the Chancellor's decree. All errors assigned will be overruled, and the decree of the Chancellor will be affirmed.

Portrum and McAmis, JJ., concur.